UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Decker and Russell
Argued at Arlington, Virginia

BRIAN TERRELL BOLAR

v.      Record No. 1152-17-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARLA GRAFF DECKER
NOVEMBER 27, 2018

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Robert L. Jenkins, Jr. (Bynum & Jenkins, on brief), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Brian Terrell Bolar appeals his conviction for using a firearm in the commission of a felony

in violation of Code § 18.2-53.1.  He was acquitted of the underlying felony in the same proceeding.

He argues that acquittal of that offense establishes that the evidence was insufficient to support his

conviction for the related firearm offense.  For the reasons that follow, we affirm the conviction.

I.  BACKGROUND[1]

In February 2017, the appellant was tried by a jury for the murder of Leon Williams and the

use of a firearm during the commission of the murder.  Numerous witnesses at trial identified the

appellant as the murderer.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] "On appeal, we . . . consider the evidence in the light most favorable to the
Commonwealth, as it prevailed in the trial court."  Whitehurst v. Commonwealth, 63 Va. App.
132, 133, 754 S.E.2d 910, 910 (2014).

Gregory Scott testified that he and the appellant talked about the death of Williams. Scott stated that the appellant admitted to shooting Williams in the back and firing the weapon again after Williams fell.

Donnell Johnson, the appellant's cousin, described seeing the appellant chase Williams on foot. Johnson heard gunshots and then the appellant ran back in his direction and down an alley. Johnson also saw the appellant throw a gun into a trash can. He testified that he told the police that the appellant was the shooter.

James Bolar, the appellant's uncle, testified that he and the appellant were together when they encountered Williams, who appeared to be looking for a weapon in his car. Bolar fled to a nearby playground. He heard gunshots while he was at the playground, and then he walked toward his car. The appellant ran to Bolar and told him, "[L]et's go." Bolar recounted that the appellant said that he did not "think he hit" Williams because Williams "hit the ground and started running again." According to Bolar, the appellant then called "Curtis" and told him to get the gun from a trash can. In addition, Bolar testified that before the encounter, the appellant told him that he needed a gun. Bolar also confirmed that the appellant told Scott that he "got" Williams.

Curtis Davis testified that he received a phone call from the appellant on the day of the murder and that the appellant told him to retrieve a gun from a trash can near the playground. Davis found the trash can as instructed, retrieved the gun, and later sold it.

On cross-examination of Bolar, the appellant established that his uncle had shot someone with a black handgun six to eight weeks before Williams' murder. Bolar also admitted that he had lied to the police about his involvement when questioned about Williams' murder. Further, Bolar conceded that he provided false alibis to the police and encouraged witnesses to lie on his behalf. On cross-examination of Davis, Davis testified that about a month before the shooting, Bolar had in

his possession the same gun used to kill Williams. Davis further testified that he had told the police that Bolar, the appellant's uncle, wanted to kill Williams.

The appellant argued to the jury that Bolar, his uncle, murdered Williams. He suggested that the Commonwealth's witnesses who identified him as the killer had lied to protect Bolar.

During deliberations, the jury asked whether it could consider the charges of murder and use of a firearm in the commission of a felony separately and find the appellant guilty on one but not the other. The trial court responded to the inquiry by stating that the jury "should consider each charge separately" and could find guilt on just one charge.

The jury convicted the appellant of using a firearm in the commission of a murder and acquitted him of the murder count. The appellant filed a motion to set aside the jury's verdict, arguing that the evidence did not support the conviction as demonstrated by the jury's rendering of inconsistent verdicts. The trial court denied the motion and sentenced the appellant to three years in prison.

## II. ANALYSIS

The appellant argues that the trial court erred by denying his motion to set aside the verdict. He challenges the sufficiency of the evidence, contending that the jury's acquittal of him on the murder charge signified that "the Commonwealth failed to prove" the charge of use of a firearm in the commission of murder, a felony, in violation of Code § 18.2-53.1.

When the sufficiency of the evidence is challenged on appeal, the Court reviews the evidence and all reasonable inferences flowing from it in the light most favorable to the Commonwealth as the prevailing party at trial. E.g., Towler v. Commonwealth, 59 Va. App. 284, 290, 718 S.E.2d 463, 466 (2011). In considering the evidence as a whole, the appellate court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Logan v. Commonwealth, 67 Va. App. 747, 753, 800 S.E.2d 202, 205 (2017) (quoting

- 3 -

Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003)).  Instead, the question on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

In making its case, the Commonwealth must exclude those "hypotheses of innocence that flow from the evidence" and not "from the imagination" of the appellant.  Tizon v. Commonwealth, 60 Va. App. 1, 12, 723 S.E.2d 260, 265 (2012) (emphasis omitted) (quoting Scott v. Commonwealth, 55 Va. App. 166, 172, 684 S.E.2d 833, 837 (2009) (*en banc*)).  However, whether a "hypothesis of innocence is reasonable is . . . a 'question of fact.'"  E.g., id. (quoting Cooper v. Commonwealth, 54 Va. App. 558, 573, 680 S.E.2d 361, 368 (2009)).  Consequently, when a trier of fact rejects a defendant's argument in support of innocence, such a finding may be set aside on appeal only if it is plainly wrong or without evidence to support it.  Jennings v. Commonwealth, 67 Va. App. 620, 626, 798 S.E.2d 828, 831 (2017).

We apply these well-established principles when considering whether the evidence was sufficient to support the conclusion that the appellant used a firearm in the commission of a felony, in this instance, murder.  Code § 18.2-53.1 provides, in pertinent part, that "[i]t shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm . . . while committing or attempting to commit" any of several enumerated crimes, including murder.  The purpose of the statute is "to deter violent criminal conduct" by "'preventing actual physical injury or death'" as well as "'discourag[ing] criminal conduct that produces fear of physical harm.'"  Rose v. Commonwealth, 53 Va. App. 505, 513, 673 S.E.2d 489, 492 (2009) (quoting Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980)).

The record entirely supports the jury's finding that the appellant used a firearm in the commission of murder. The Commonwealth's evidence proved that the appellant intentionally shot Williams with a firearm and made inculpatory statements admitting that he committed the murder.

The appellant's theory of innocence below was that his uncle, Bolar, committed the crimes and that he and other witnesses lied during their testimony. However, the law is clear that determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear the witnesses and observe them as they testify. Towler, 59 Va. App. at 291, 718 S.E.2d at 467. "[T]here can be no relief" in this Court if a witness testifies to facts "which, if true, are sufficient to maintain the[] verdict, . . . [i]f the trier of the facts . . . base[d] the verdict upon that testimony," even if that "witness' credit [was] impeached by contradictory statements." Id. (quoting Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989)).

The "conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" Johnson v. Commonwealth, 58 Va. App. 303, 315, 709 S.E.2d 175, 181 (2011) (alteration in original) (quoting Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991)). Testimony is incredible as a matter of law only if it is "'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Gerald v. Commonwealth, 295 Va. 469, 487, 813 S.E.2d 722, 732 (2018) (quoting Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006)).

Scott and Bolar both testified that the appellant made inculpatory statements about shooting Williams. Additionally, Johnson said that he saw the appellant chase Williams. Johnson heard gunshots immediately before the appellant ran back in his direction and threw a gun into a trash can.

Witnesses also stated that at the appellant's request, Curtis later retrieved the gun from that location. The Commonwealth's witnesses were not inherently incredible as a matter of law, nor does the appellant argue that they were. Based on the record, a reasonable fact finder with all of the evidence before it could have determined that the Commonwealth's witnesses were credible and that the appellant used a firearm in the commission of Williams' murder. The jury, as the finder of fact, was entitled to reject the appellant's hypothesis of innocence that his uncle shot the victim. See Tizon, 60 Va. App. at 12, 723 S.E.2d at 265.

The appellant suggests that the jury's acquittal on the murder charge signifies that the evidence was insufficient to support the firearm conviction. However, "inconsistent verdicts rendered by a jury do not constitute reversible error." Wilkerson v. Commonwealth, 33 Va. App. 808, 823, 537 S.E.2d 27, 34 (2000). "[S]uch behavior" does not infringe on any of a defendant's constitutional rights, "and as a result, states may develop their own rules regarding such verdicts." Commonwealth v. Greer, 63 Va. App. 561, 571, 760 S.E.2d 132, 136 (2014) (quoting Wolfe v. Commonwealth, 6 Va. App. 640, 648, 371 S.E.2d 314, 318 (1988)).

In the Commonwealth, courts have long observed that "[j]uries may reach inconsistent verdicts through mistake, compromise, or lenity, but in such instances it is 'unclear whose ox has been gored,' the government's or the defendant's." Ludwig v. Commonwealth, 52 Va. App. 1, 13, 660 S.E.2d 679, 685 (2008) (quoting Wolfe, 6 Va. App. at 648, 371 S.E.2d at 318). Virginia is "'more careful than most states to protect the inviolability and secrecy of jurors' deliberations,' [such that] a court, in a case like this, is unlikely to discover what motivated the jury." Reed v. Commonwealth, 239 Va. 594, 598, 391 S.E.2d 75, 77 (1990) (quoting Caterpillar Tractor Co. v. Hulvey, 233 Va. 77, 82, 353 S.E.2d 747, 750 (1987)). "The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." Greer,

63 Va. App. at 571, 760 S.E.2d at 137 (quoting Wolfe, 6 Va. App. at 647, 371 S.E.2d at 318). "For this reason and the fact that the government is precluded from appealing the acquittal verdict, . . . inconsistent verdicts [in the guilt phase of a jury trial] should not provide the basis for an appeal by the defendant." Id. (alterations in original) (quoting Wolfe, 6 Va. App. at 648, 371 S.E.2d at 318). "Despite the apparent inconsistency of a [jury's] verdict[s], courts may uphold inconsistent verdicts, provided that the evidence supports the verdict challenged on appeal." Kovalaske v. Commonwealth, 56 Va. App. 224, 233, 692 S.E.2d 641, 646 (2010).

These principles hold true even when the inconsistent verdicts involve "predicate and compound offenses committed at the same time and place." Reed, 239 Va. at 597, 391 S.E.2d at 76 (citing Dunn v. United States, 284 U.S. 390 (1932)). "[A] criminal defendant convicted by a jury on one count [may] not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count." Wolfe, 6 Va. App. at 647, 371 S.E.2d at 318 (discussing United States v. Powell, 469 U.S. 57 (1984)).

For these reasons, the evidence was sufficient to support the conviction, and the inconsistent verdicts do not provide a basis for reversing. Accordingly, the trial court did not err by denying appellant's motion to set aside the conviction for the use of a firearm in the commission of murder.

## III. CONCLUSION

The evidence, viewed in the light most favorable to the Commonwealth, supports the jury's conclusion that the appellant committed the crime of use of a firearm in commission of a felony in violation of Code § 18.2-53.1. Therefore, we affirm the conviction.

Affirmed.